Good morning, Your Honors. May it please the Court. My name is Saad Ahmed, and I represent the petitioners in this case. They are a family of four from India, and they are seeking review of the Board's final order of removal, in which the Board affirmed the immigration judge's decision to deny their applications for asylum, withholding of removal, and relief under the Convention Against Torture. And the petitioners also seek review of the Board's denial of their request for a continuance on the basis of the lead petitioner's approved I-140 petition, which is an employment-based green card petition. Could you start with the second issue rather than the first one? And tell me, what's the priority date now? Your Honor — This was five years ago when it passed through the administrative proceedings. Yes. Thank you, Judge Horwitz. The priority date is current. In fact, they are right now adjudicating December. The cases that were filed, labor certifications that were filed in December of 2003, so the priority date is current by more than six months. So — When you say the priority date is current, spell that out. What does that mean? I'm not quite sure I understand. Well, Your Honor, what happens is that for employment-based visa petitions, there is a place in line because there's oversubscribed visas. And so Congress has a process in which an I-130 or an I-140 is processed based on its place in line. And for employment-based visa petitions that were filed in October of 2002, when the lead petitioner's employer filed his case, labor certification was filed, it's now current. So the lead petitioner's — In other words, they are now working on October 2002 applications. They finally come to the top of the heap sort of thing? That's correct. All right. That's correct. So again, because this is not something we normally deal with, I want to understand this. If the Petitioner, Mr. Seddy, were to have left the country and the application were approved, he could come back? Yes, Your Honor. Technically, yes, but it's a very difficult process. Because once you leave the country, then you have to go through consular processing. There are also bars to entering the country. There are bars to inadmissibility based on unlawful presence. So there are a lot of — there are a host of issues. So it's a lot easier for someone to adjust status in the U.S. if they could. But can his status be adjusted while this case is pending? It cannot be adjusted unless the case goes back to the immigration court. In other words, it can't be adjusted while the case is here. That's correct. But it could be adjusted were we to remand to the immigration court. That's correct. Okay. That was my understanding, but I wasn't sure I was right about it. Yes. Now, focusing on that issue, on your arguments on that issue, tell us why you think the immigration judge and the BIA erred in not granting a continuance. Well, Your Honor, first of all, the Board has set precedents, two precedents, in matter of Hashmi and matter of Raja. Those two cases provide that the immigration judge look at several factors in order to make a determination whether to grant a continuance on the basis of an employment base or a family-based visa petition. In this case, the only factor the judge had considered in denying the continuance request was the fact that the priority date was not current. He was entitled to consider that factor, but there were Raja-less others, correct? Yes, Your Honor. He was entitled to consider that one factor, but he has to first consider other factors such as eligibility for relief, such as the DHS's response to the motion, also to determine whether the lead petition was entitled to a favorable exercise of discretion. And so let's assume he didn't, because I've read his decision, and he didn't speak about those factors. He did speak about lengthy illegal presence. Is that a factor that trumps the other ones? Yes and no, Your Honor. First of all, I'd like to point out that this Court can only affirm the Board's decision based on the ground the Board relied on. I mean, Supreme Court said the agency's decision can only be affirmed based on the grounds relied on by the agency. Secondly, and more importantly the Board's decision can only be affirmed based on the grounds relied on by the agency. It did adopt the IJ's analysis, but the problem was that there was a lot of assumptions in the judge's decision as well as the Board. Yes, the unlawful presence is one of the bars to adjustment. However, there are exceptions to that rule. One is Section 245I for visa petitions that were filed prior to April of 2001. And there's no evidence in the record whether a respondent could qualify under that provision, even though they were out of status. Now, secondly, the Board and the immigration judge in adjudicating an adjustment application can also overlook someone's being – who's out of status if the immigration judge said he was – if he or she was out of status based on technical reasons. Roberts, I understand that the Board can do all that, but I take it your argument is that the – that the IJ didn't consider all the Raja factors. That's correct. The Board cited Raja, but didn't have any discussion on it. And my question was, are you excused from considering all the Raja factors if you have a factor such as illegal presence, even though it may be explained? No. I believe, Your Honor, as the Third Circuit, as well as the Eleventh Circuit, your colleagues in those circuits, explained that the Board can consider or the judge can consider one factor, but he must consider all the other factors first before considering whether the priority date is too remote or whether the person is not prima status. Because there's a reason those factors were given by the Board. The reason for that was that the Board recognized that the – that there are various factors that come into play – family ties, prom official eligibility for adjustment, whether someone is entitled to a favorable exercise of discretion. And we believe that had the immigration judge looked at all those factors and then at the end said that, well, I'm not going to grant a continuance because the priority date is too remote, or that – that this case does not – would not comply with his case completion goals or his docket, perhaps that would have been fine. But in this case, he left out all the other factors and focused solely on one factor, which is a mistake under this Court's – under the Board's decision. But, counsel, doesn't the absence of a prima facie showing of eligibility trump everything? Well, Your Honor, here what the prima facie eligibility means that – I don't believe they're saying that it's prima facie – they're saying that they're not prima facie eligible for adjustment of status because the priority date is not current. If you look at the Board's decision, that's what it says. It's not saying that, well, he's not eligible for adjustment because he's illegally present or some other factor. They're saying that he's not – he's not prima facie eligible because the priority date is not current. So that's – Did you move to remand this case now that it's current? Well, Your Honor, in order for us to do that, we'll have to file a joint motion with the DHS. It's totally in their interest. Have you consulted – have you consulted the DHS, your opposing counsel? No, Your Honor. We haven't consulted OIL, but we are in the process of consulting with the DHS office in San Francisco to see if they will join us in remanding the case. Well, it seems to me that if the key is current eligibility and you're making a representation that he is now current, that's something that ought to be negotiated with your opposing counsel, because that's the basis upon which the I.J. made his decision, is it not? That's correct. That's correct. And, Your Honor, we certainly will look into that. Well, yes. But the problem is that on the basis of the record, it seems to me you have a problem. Well, Your Honor, on the basis of the record, are you talking about the adverse credibility determination? That's another issue. I'm just talking about the Hashmi factor issue. Yes, Your Honor. Well, Your Honor, we believe that based on the record, if we are able to establish that the board did not look into all the factors, because there was a reason why the board came up with those factors, as I said. So as I understand, your position is that when the I.J. said there's no prima facie eligibility, that was based solely on the distance of the eligibility date. Yes, Your Honor, because And that's an improper conclusion without considering other factors. Yes, Your Honor. And the reason why we believe that to be our position is because if you look at the decision of the immigration judge, he said himself in the decision that he would consider granting a continuance if he was assured that it won't take more than one year for the visa petition to be – for the priority date to become current. So we believe that there's no meaningful – like, for this Court to be able to meaningfully review the decision, the judge has to be more clear, and that's why those factors are so important. Thank you, Your Honor. I think my time is up. Thank you. Yes, your time has expired, counsel. Thank you.  Good morning, judges. May it please the Court. Anita Natwim on behalf of the Attorney General Eric Holder. Your Honor, I would like to mention at the outset that oil is amenable to discussing remand on the case in terms of Mr. Setia and his family's ability to adjust, but based on the record today, I would like to submit that the agency decision was proper because all the Raja factors were considered. Well, you may have persuaded me on that, counsel, but the problem is we have a record here, and unless you're willing at this point to ask for a remand or perhaps move to have this case sent to our mediation group to hold it while you work something out, I'm afraid we're going to have to look at it from the standpoint of the record. Let me suggest something to you. We can hear you today, and then we can refer the case to mediation and with your approval, and if you can't work it out in mediation, we'll decide it. Is that acceptable to the government? Just to clarify, Your Honor, you would hear the facts, you would hear the argument and then we'll finish your argument, and then we'll send the case to mediation and if you guys can't settle it, we'll then decide it. Would that be acceptable to the government? I'm not sure, Your Honor, if I could just off the top of my head agree to remand, just because I don't think that's the case. We're not talking about remand. I'm talking about sending this to our mediation group where you two will discuss whether or not you want to settle it. We'll hold the case, we'll give you a rather short deadline to figure out whether you can settle it, and if you can't, we'll decide it on its merits. I misspoke.  I just want to clarify that actually the visa bulletin, Mr. Setia's date, isn't current. Under the visa bulletin, I think opposing counsel may have misinterpreted, while his date has passed, so the visa application or the priority date has passed, that section of the visa bulletin is oversubscribed. So it means that there are actually not enough visas allocated per year based on India is the country where Mr. Setia is from. And so it's not entirely clear that he does have the visa. He's immediately available to apply for a visa. Kennedy, what is in your estimate would be the date upon which he might be near eligibility or eligible? We have a representation from opposing counsel that it's current. Now, the government is telling us it is not current? Well, it's not current based on the visa bulletin. So if it was current, it would say C on the visa bulletin, but it doesn't say C. It has the date, and the date, from the date, it's evident or it provides that applications that were filed prior to that date, that people who have applications filed prior to that date can apply, but they're not necessarily enough visas. And so, for instance, for India, with a country where you have a lot of applicants and there's a lower number of visas allocated per year, and so it's actually oversubscribed is the correct terminology. Okay, but give us an estimate. Are we five years, three years, one year? Your Honor, I think this case shows the complexity of it. The immigration judge wasn't able to, I'm not able to answer the question in that. It's very fluid. Here's my problem with the case, and you tell me what we should do with it, since you're arguing it. Five years ago or so, the immigration judge says, I would consider continuing these proceedings, but my God, it's going to be a long, long time before you reach your priority date. And now it appears that Mr. Cetia is either there or very close to his priority date. And he's saying, gee, if the IJ were looking at this today, he would grant me a continuance and we'd be done with this case. And the IJ apparently only considered that one issue of how far away the priority date is. At least he didn't expressly consider the other Cetia issues. I don't see anything in the record that does that. So tell me what I do with that. Well, Your Honor, if I might just point out in the record where the IJ does discuss all the factors, he didn't just deny the continuance based on the one Raja factor. Show me where you discuss the other Raja factors. So Raja, one of the factors is the reason for the continuance and other procedural factors. And so in the record at page 122-123, he talks about the reason Mr. Cetia has requested the continuance in order to wait for the visa petition or for the number to become the date to become current. Well, excuse me, what were the ER sites there? AR-122 and AR-123 is IJ's discussion in the IJ decision. But that's not a negative factor. That's not a that's just the reason why somebody is seeking the continuance, correct? Yes, Your Honor. He didn't turn him down because he was seeking the continuance for that reason. Well, no, he looked at all the factors is the point I'm making, Judge. So he also looked at whether the underlying visa petition is prima facie approvable and whether the Respondent's application for adjustment merits a favorable exercise of discretion and whether the Respondent was statutorily eligible for adjustment as high as. He said those are the factors that Raja requires. Where did he discuss them? So on page 123, he talks about unlawful presence. That's one of the factors that goes towards his statutory eligibility. He also discusses Is it one of the five Raja factors? That is one of the five Raja factors, Your Honor, and that's on page 123 of the record. The immigration judge also discusses whether a petitioner merits a favorable exercise of discretion, and he ties this in again on page 123 in the languages. The court in these circumstances cannot exercise discretion. You're kind of rushing through. I apologize, Your Honor. At 123. Yes, about midway or a third. Yes. Of the way. Counsel. The court. Slow. Counsel. No questions pending. I just asked you to slow down. Okay. I'm there. That's why I'm about to ask the question. The court recognizes that there are certain penalties based upon the accumulation of illegal presence in the United States. That's a factor, correct? Yes, Your Honor. Yes. And the Respondent has accrued illegal presence. However, those penalties are subject to waiver. So is that a negative or a positive? In other words, he considered it, but even though it may be positive because he may get a waiver, is that what you're saying? So all he has to do is mention it, and even if it comes out and appears to come out in his favor because it could be waived, you're saying, well, that's enough? I'm actually saying, Judge, that the I.J. did consider it, and I would say, like, looking at he didn't necessarily reach a negative or positive on that one point, but he looked at all the factors in a totality, and that's how he reached the negative decision to deny the continuance. Well, the I.J. You're basing that on these two pages. Yes, Your Honor. 122. And 123 of the record. If I read these pages as the I.J. saying, here's all the factors, but what and this one could be a positive or a negative, but what really I'm deciding on is the basis that the priority date is so far away. And I'm looking at 123. The Court will again deny the request for continuance based on the possibility that the Respondent's priority date may become current. I don't know what that means, but it suggests that this is based on priority date alone. Because the Court mentions earlier, there is a thing called a legal presence, and that could be a negative, but it could be waived. But in the end of the day, what I'm basing this on is the priority date. Isn't that a fair reading of pages 122 and 123? I would disagree slightly with Your Honor in that the immigration judge, while considering the fact that there might be a waiver, there was no analysis done. You know, there wasn't a determination made as to whether Mr. Cetia would be ---- Kennedy, there wasn't any waiver, and he noted the illegal presence. Yes, that's correct, Your Honor. So the I.J. did consider, you know, like you said, Wayne, what was the case before him, and decided that the outcome would be based on all the factors mentioned in Raja and that all the factors that the I.J. had considered that Mr. Cetia hadn't shown good cause for the continuance. And I agree that the priority date might have waived or, sorry, might have weighed a little more strongly compared to the others, since it was such a speculative or a date that seemed far away based on the I.J.'s consideration. But at the same time, immigration judges have a lot of discretion in terms of, you know, granting continuances, and the I.J. did consider the Raja found out. Let me ask you a question. If ---- how long would it take you and the other side to determine whether you could agree on a remand? A remand? Or mediation? You just said you were willing to discuss with the other side the notion of a remand to the court. I apologize. I misspoke. I meant mediation, not the remand. Okay. Well, no, I meant mediation, and you said remand. So let me ask again. If it's mediation, how long would it take for you and Mr. Cetia's attorney to determine whether or not you were amenable to mediation? Could you let us know by the end of the week? Absolutely, Your Honor. Thank you. While I may be open to mediation, I would respectfully decline to send a mediation unless I had some indication from the government that you were amenable to that. Now, your opening statement was that you were amenable to discussion with your opposing counsel. To what what's the breadth of that amenability? Well, Your Honor, just, you know, a lot of the points that the opposing counsel mentioned today, the government is hearing for the first time about the 245i. He says it's not on the record, but he mentions to me today that Mr. Cetia has a sister who might have who has filed an application on his behalf. There seems like there are a lot of loose ends, I agree, that complicate the matter. Well, let's assume that Judge O'Scanlon and I agree that we wouldn't send this to mediation absent the consent of both parties. Are you telling us that you could both let us know by Friday whether or not both parties would consent to this case being sent to mediation? Yes, Your Honor. And just to clarify, while we're open and we can definitely tell you by Friday, I just would like to state, though, that on the record, like, I do believe that the agency decision is a sound one based on the record. And we have your brief and we have your arguments. Yes. And if you guys can't agree on mediation, I suspect we'll let you know which side we think is right. And I apologize for wasting the Court's time. I feel like a lot of these facts are a lot of the helpers. You're not wasting the Court's time at all, counsel. I appreciate your openness. I'm hearing for the first time also. Well, I'm going to suggest this. We have to concur, of course, and consult after our argument is over. But I'm inclined to suggest that we simply defer submission until Friday, by which time we will hear from both counsel as to whether you're amenable to mediation. Thank you, Your Honor. Very well. Anything further? No, thank you. The case just argued will be held in abeyance and deferred. Submission will be deferred until Friday, pending further notification from counsel.
judges: O'scannlain, Fisher, Hurwitz